# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| | | DATE | 3/15/2000 |
| CASE NUMBER | 98 C 1622 | | |
| CASE TITLE | UNITED STATES OF AMERICA vs. MEDCO PHYSICIANS UNLIMITED | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's motion for partial summary judgment [56-1] is granted in part and denied in part as to Medco. Medco's motion for additional discovery pursuant to 56(f) [77-1] is denied. Plaintiff's motion for partial summary judgment as to United Transportation [53-1] is denied. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices | |
| | No notices required. | | |
| | Notices mailed by judge's staff. | MAR 17 2000 date docketed | 84 |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | S.B. docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| CG | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) No. 98 C 1622 |
|  | ) Judge Ronald A. Guzman |
| MEDCO PHYSICIANS UNLIMITED, and United Transportation Company | ) |
| Defendants. | ) DOCKETED<br>MAR 17 2000 |

## MEMORANDUM OPINION AND ORDER

Pending is plaintiff the United States of America's motion for summary judgment against defendants, Medco Physicians Unlimited and United Transportation Company pursuant to Fed. R. Civ. Proc. 56. Also pending is Medco's motion for additional discovery pursuant to Fed. R. Civ. Proc. 56 (f). For the reasons set forth below plaintiff's motion for summary judgment is denied in part and granted in part as to Medco Physicians. Medco's motion for additional discovery is denied. Plaintiff's motion for summary judgment as to United Transportation is denied.

## FACTUAL BACKGROUND

Plaintiff, United States of America has filed a complaint against defendants Medco Physicians Unlimited ("Medco") and United Transportation Company ("United

1

84

Transportation"), alleging that defendants filed false claims for payment by Medicare totaling over $1.3 million dollars in 1994. Plaintiff alleges violations of the False Claims Act, 31 U.S.C. §§ 3729-3733; common law fraud; unjust enrichment; and payment under mistake of fact, and seeks to recover the funds paid by Medicare to Medco and United Transportation in 1994.

In 1994 Medco received approval from the Department of Health and Human Services (HHS) and the Health Care Financing Administration ("HCFA") to operate as a for-profit Community Mental Health Center ("CMHC"). CMHC's have been created to provide partial hospitalization services particularly psychiatric services/therapy, to patients who need treatment but who do not require inpatient hospital care. In order for a patient to be admitted to a CMHC, or any form of partial hospitalization, a psychiatrist or a physician (not a psychologist) who has been trained in the diagnosis and treatment of psychiatric illnesses, must admit and certify that the patient needs such care.

Patients who are eligible for Medicare coverage through a CMHC or other form of partial hospitalization program are either: (1) patients who have been discharged from an inpatient hospital treatment program, and the CMHC provides treatment instead of having the patent continue his/her stay in the hospital; or (2) patients who in the absence of attending the CMHC program would require inpatient hospitalization. 42 U.S.C. A. 300x-4(c)(4).

In order for a CMHC to admit the patient and to bill Medicare for the treatment rendered, there must be a reasonable expectation of improvement in the patient's disorder and level of functioning as a result of the active treatment provided by the CMHC. Active treatment means that the health care professionals who are treating the patients must directly address the patient's problems which required the patient to be admitted to the CMHC. The medical condition that

required the patient to be admitted must be of acute nature and not a chronic nature. Partial hospitalization services offered at CMHCs differ from Adult Day Care Programs in that the latter primarily offers social, recreational or diversional activities, and/or custodial or respite care. This is not to say that the services provided by Adult Day Care Programs are not important, however, those services are not covered by Medicare. Although Medco referred to its program as an Adult Day Care Program it is disputed whether the program administered by Medco was a CMHC or an Adult Day Care Program.

Medco elected the following people to serve as officers: Anwar Yamini as president; Tajiddin Faisal, who is Yamini's brother and the owner of United Transportation Company as vice president; Louise Thomas ("Thomas"), who is Yamini's sister, as secretary/treasurer. United Transportation was designated to transport Medco's clients. In addition, Rosa Brown ("Brown"), a psychologist and Faye Brewer ("Brewer") were elected to the board. Brown was appointed as Medco's psychologist. Brown did not work with a physician or psychiatrist in developing the treatment plans. Brewer coordinated the nursing service at Medco in 1994 and developed the individual treatment plans for the patients who attended Medco's program. In addition, the Larry Faisal Catering Service, which was owned by Faisal and his wife, was selected as a food vendor.

Medco's first fiscal year ended on December 31, 1994, and Medco was to submit a cost report to the <u>Medicare Intermediary Health Care Service Corporation</u> ("HCSC"). Medco kept a chart of accounts from its 1994 fiscal year, which included entries for: psychologist, catering services, catering others, and transportation expenses. Medco did not have a physician or a psychiatrist on staff and no entries existed on the chart for a psychiatrist or a physician.

3

Medco's cost report for the year ending December 1994 was due to be filed with HCSC or about March 31, 1995. Medco submitted five different versions of the 1994 cost report. The first four versions were rejected and the fifth version accepted for purposes of auditing the report. The first version submitted on or about March 31, 1995 indicated that Medicare owned Medco over $3.4 million in addition to the more than $1.3 million in interim payments Medco received in 1994. The second version submitted on June 7, 1995, indicated that Medicare owed Medco over $2.5 million. The third version submitted on June 21, 1995, indicated that Medicare owed Medco over $2.8 million. The fourth version submitted on July 20, 1995, indicated that Medicare owed Medco approximately $28,000. Medco finally submitted it's fifth version of the report. Yamini signed all five version of Medco's cost reports. It is unclear how much Medco claimed it was owed pursuant to this fifth version.

HCSC responded to each version of the cost report Medco submitted. For example, HCSC wrote a letter to Yamini regarding problems with the fourth version. HCSC pointed out that the cost report stated that Medco's accountant had not prepared a set of financial statements for the 1994 fiscal year. HCSC also addressed the fact that Medco treated meal and transportation costs as allowable expenses in the cost report contrary to the cost reporting instruction. Yamini indicated on subsequent pages of the cost report that Medco was not involved with "related organizations, management contracts and services under arrangements as owners (stockholders), management, by family relationship, or any other similar type relationship" and certified that Medco was meeting the applicable requirements of the Public Service Act and acknowledged that any fraudulent claims were punishable by law.

Medco's fifth version of the 1994 cost report was then audited by HCSC auditors.

4

Patrick Hanlon and James Ward were assigned to audit Medco in early 1996. They began the auditing process by reviewing Medco's cost report and any financial statements submitted with the report. They compiled a list of document requests after reviewing the report and sent the list to Yamini. When they sent the list to Yamini they requested that the documents be pulled so that they could examine these documents when they went to Medco to perform the field audit. When they began the field audit they discovered that Medco did not maintain a detailed general ledger/trial balance that could be used to support Medco's claimed expenses for fiscal year 1994. As a result of Medco's failure to maintain a general ledger, the auditors had to go through Medco's check register in order to create a trial balance. Once the auditors established a starting point by attempting to recreate a trial balance, they requested invoices, receipts and/or other documentation from Medco to substantiate its claimed expenses.

The auditors received several forms of invoices or receipts from Medco which Yamini presented to them to justify administrative and general expenses that Medco claimed in the cost report. Upon review of Medco's files and/or records the auditors discovered that Medco often failed to keep copies of receipts or invoices to support its claimed expanses. In addition, they discovered that is was often the case that if a receipt existed, the receipt would be for expenses that were not covered by Medicare, e.g., Medco presented receipts for a Yamini family dinner at a Holiday Inn and for entertainment provided by Horace Smith and the Note Benders. The auditors noticed that the invoices or receipts were actually related to meals and transportation costs. Accordingly, they adjusted these claimed expenses in the cost report so that the costs would be classified as meals and transportation expenses rather than administrative and general expenses. Upon reviewing the invoices and receipts Medco gave the auditors to justify its costs,

5

they noticed that meals and transportation expenses were claimed in a variety of ways. For example, with respect to the meals' expanses, Medco provided an invoice to the auditors which showed that Medco paid the Larry-Faisal Catering Service over $130,000 in 1994 for meals. Medco also provided other receipts from fast-food restaurants and grocery stores. With respect to the transportation expenses, Medco provided the auditors with an invoice from United Transportation which showed that Medco paid United Transportation approximately $211,353.53 in 1994, and Medco provided the auditors with receipts for payments made to other transportation companies. Medco also provided the auditors with receipts which showed payments made directly by Medco for gas and car repair expenses. In addition, when the auditors examined Medco's payroll they discovered that Medco was directly paying truck drivers, mechanics and food preparation personnel. The audit also revealed that Medco paid Larry-Faisal Catering service at least $111,545.22 for catering services during the 1994 fiscal year.

During the audit, the auditors also inquired about whether Medco did any business with family members. They learned that United Transportation, which was the transportation company that Medco paid approximately $211,353.53 to in 1994, was owned by Yamini's brother, Faisal. They also discovered that Faisal worked at Medco and received a salary. In addition to Faisal, when they reviewed Medco's payroll records they discovered that many other family members were paid by Medco, including family members who owned transportation and construction companies which did business with Medco.

Two experts, Dr. Randy Georgemiller and Dr. Richard Baer, reviewed 16 patient files of patients who attended Medco's programs in 1994. Dr. Georgemiller reviewed 10 case files and

found that all 10 cases failed to demonstrate that the patients were proper candidates for partial hospitalization services. Dr. Georgemiller stated that even when "there were instances of actually documenting treatment goals, there was no indication of acute psychiatric symptoms which would require intensive treatment as required by Partial Hospitalization Program's admission. He concluded that much of the program offered at Medco was "purely activity oriented for purposes of social stimulation." "There was no physician oversight in treatment planning, diagnosis, or monitoring ongoing treatment rendered, except for one case in 1995 when Dr. Syed Khadri was hired by Medco.

Dr. Baer's conclusions were consistent with the findings made by Dr. Georgemiller. Dr. Baer opined that Medco offered "day care services for the chronically mentally ill designed to enhance socialization and self care". Day Care Programs and services "are explicitly not covered by Medicare. The program content, treatment planning, and therapy services were not supervised by a physician, and as such did not constitute active treatment of an acute mental disorder."

## JURISDICTION

This Court has jurisdiction over this case pursuant to the False Claims Act, 31 U.S.C. § 3730 (a) and 3732, and under common law theories of liability pursuant to 28 U.S.C. §§ 1331 and 1345.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under Rule 56 when the moving papers including affidavits and other admissible evidence in the record show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c);

7

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct., 7548, 91 L.Ed.2d 265 (1986); *Unterreiner v. Volkswagen of America, Inc.*, 8 F. 3d 1206, 1209 (7th Cir. 1993). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Fisher v. Transco Services-Milwaukee, Inc.*, 979 F.2d 1239 (7th Cir. 1992).

## I. Medco's Motion to Reopen Discovery

Medco in accordance with part (f) of Fed. R. Civ. Proc. 56 has asked this court to deny summary judgment on the basis that Medco cannot complete discovery. The reason Medco cannot complete discovery is because the plaintiff has frozen Medco's accounts pursuant to pre-judgment attachment. Without these funds, Medco claims it is unable to undertake discovery and depose a number of individuals. Medco further indicates that if it had the funds to undertake discovery, it believes it could show that Dr. Michael Reinstein, among others, supervised and/or reviewed Medco's treatment of its patients in a manner sufficient to meet Medicare's requirements.

A party invoking Federal Rule 56 (f) " must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's affidavits..... and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Korf v. Ball State Univ.*, 726 F.2d 1222, 1230 (7th Cir. 1984) (quoting *Willimar Poultry Co. v. Morton-Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir.1975)). The party opposing summary judgment must make his request for additional discovery in the form of an affidavit and show that additional relevant evidence exists. Fed. R. Civ. P. 56(f); *Ford v. Roth*, No. 91 C 4907, 1993 WL 96526, at *2 (N.D.Ill. March 31,1993).

8

Specific assertions which could produce a genuine issue of material fact, not mere speculation, are required. *United States v. On Leong Chinese Merchants Ass'n Bldg.*, 918 F.2d 1289, 1295 (7th Cir. 1990); *Ford*, 1993 WL 96526, at *2. The party must also show that he has not been dilatory in pursuing discovery. *United States v. Bob Stofer Oldsmobile-Cadillac, Inc.*, 766 F.2d 1147, 1152-53 (7th Cir. 1985). Several factors are relevant in determining whether a party has been dilatory: "1) the length of the pendency of the case prior to the Rule 56 (f) request; 2) whether and when plaintiff could have anticipated its need for the requested discovery; 3) the previous efforts, if any, made by plaintiff to obtain the needed information either through discovery or otherwise; 4) the degree and nature of discovery already undertaken; 5) any limitations placed upon discovery previously by the trial court; 6) any prior solicitation of or provisions for discovery by the trial court; 7) any warning which plaintiff might have had that, absent a speedier request, discovery might be denied and his claim dismissed; and 8) weather the requested information was inaccessible to plaintiff." *Kadair, Inc. v. Sony Corp.*, 694 F.2d. 1017, 1031 (5th Cir. 1983).

The history of this case reveals that Judge Gettleman has given Medco and its counsel more than a reasonable amount of time and a number of extensions in order to conduct discovery. It is undisputed that Medco refused to respond to a number of discovery motions. After Medco's first counsel withdrew this Court again extended the discovery cut-off dates. Once new counsel was in place this court again extended the dates in this case. This case has been pending since 1998. Defendants could have anticipated its need for the requested discovery much earlier. This court believes that defendants have been dilatory and have had ample opportunity to conduct appropriate discovery. Accordingly, the motion to reopen is denied.

We also deny Medco's request to vacate the pre-judgment attachment order. Judge Gettlemen previously ruled on this request and the rule of the law of the case applies.

## DISCUSSION

Plaintiff alleges that Medco violated the False Claims Act. In response to the fraudulent practices by defense contractors during the Civil War, the False Claims Act ("FCA") was first adopted in 1863 and signed into law by President Lincoln. The FCA, in its present incarnation, allows the government to recover treble damages from those making false claims or submitting false information in support of those claims. 31 U.S.C. § 3729. In addition, the United States is entitled to a $5,000-$10,000 penalty for each fraudulent submission regardless of actual damage. 31 U.S.C. § 3729 et seq.

In order to succeed on a FCA claim, plaintiff must establish that Medco "knowingly present[ed] or cause[d] to be presented" a "false or fraudulent claim for payment or approval" to the United States government. 31 U.S.C. § 3729 (a)(1). The term "knowingly" means that a person has actual knowledge of the information, or acts in deliberate ignorance or reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b). Innocent mistakes or mere negligence are not actionable, but a specific intent to deceive is not necessary. *Hindo v. Univ. of Health Sciences/The Chicago Medical School*, 65 F. 3d 608, 613 (7th Cir. 1995), cert. denied, 516 U.S. 1114, 116 S. Ct. 915, 133 L. Ed.2d 846 (1996). "The requisite intent is the knowing presentation of what is know to be false." *Id.*

### I. Medco

Plaintiff's allegation that Medco submitted false claims to the government rests on four

essential arguments. First, plaintiff argues that Medco <u>did not follow the necessary requirements to admit patients to a CMHC</u>, e.g., Medco did not have a physician or psychiatrist perform the required steps to admit and care for patients at any time in 1994. Second, plaintiff alleges that Medco submitted false claims for payment to the Medicare program for medically unnecessary services, i.e. custodial care in violation of 42 U.S.C. § 1395y(a)(9). Third, Medco submitted false claims, including expense and cost information, when it filed various cost reports for fiscal year 1994 that sought reimbursement from the Medicare program. Finally, plaintiff alleges that Medco is liable under common law theories of fraud, unjust enrichment and payment by mistake. Each of these arguments will be addressed in turn.

Plaintiff contends that Medicare requires that each patient admitted into a CMHC program be admitted with the signature and supervision of a physician, see 42 U.S.C. §1395x(ff)(1)-(3); 42C.F.R.§410.110; 59 Fed. Reg. 6570, 6573 (2/11/94). Plaintiff contends that during all of 1994 Medco did not have a physician on staff, or an arrangement with a physician, to perform necessary certifications or to develop and oversee the patients' individualized treatment plans. Rather, Medco hire Rosa Brown, a psychologist, to oversee the therapeutic services Medco provided to patients attending its programs in 1994. 42 U.S.C. § 1395x(ff)(1),(2)and (3) provides as follows:

**(ff) Partial hospitalization services**

(1) The term "partial hospitalization services" means the items and services described in paragraph (2) prescribed by a physician and provided under a program described in paragraph (3) under the supervision of a physician pursuant to an individualized, written plan of treatment established and periodically reviewed by a physician (in consultation with appropriate staff participating in such programs), which plan sets forth the physician's diagnosis, the type, amount, frequency, and duration of the items and services provided under the plan, and the goals for treatment under the plan.

(2) The items and services described in this paragraph are—
  (A) individual and group therapy with physicians or psychologists (or other mental health professionals to the extent authorized under State law).
  (B) occupational therapy requiring the skills of a qualified occupational therapist,
  (C) services of social workers, trained psychiatric nurses, and other staff trained to work with psychiatric patients,
  (D) drugs and biologicals furnished for therapeutic purposes (which cannot, as determined in accordance with regulations, be self-administered),
  (E) individualized activity therapies that are not primarily recreational or diversionary,
  (F) family counseling (the primary purpose of which is treatment of the individual's condition),
  (G) patient training and education (to the extent that training and educational activities are closely and clearly related to individual's condition),
  (H) diagnostic services, and
  (I) such other items and services as the Secretary may provide (but in no event to include meals and transportation); that are reasonable and necessary for the diagnosis or active treatment of the individual's condition, reasonably expected to improve or maintain the individual's condition and functional level and prevent relapse or hospitalization, and furnished pursuant to such guidelines relating to frequency and duration of services as the Secretary shall by regulation established (taking into account accepted norms of medical practice and the reasonable expectation of patient improvement).

(3)(A) A program described in this paragraph is a program which is furnished by a hospital to its outpatients or by a community mental health center (as defined in subparagraph (B)), and which is a distinct and organized intensive ambulatory treatments service offering less than 24-hour-daily care.

(B) For purposes of subparagraph (A), the term "community mental health center" means an entity—
(i) providing the services described in section 1916(c)(4) of the Public Health Service at [42 U.S.C.A. 300x-4(c)(4)]; and
(ii) meeting applicable licensing or certification requirements for community health centers in the State in which it is located.

Plaintiff claims that the most obvious example of how Medco failed to comply with the law and regulations governing CMHCs is that it failed to have a physician or psychiatrist establish and review the individualized treatment plans for each patient. 42 U.S.C. § 1395(n)(a)(2)(F) and 59 Fed. Reg. 6570, 6573. Medco responds in its Local Rule 12(N)

12

statement that licensed physicians did in fact refer the patients to Medco. In support of this assertion of fact, Medco presents copies of medical records from several of its patients suffering from various mental disorders such as schizo affective disorder, hyponatermia paranoia, psychogenic polydyspia, seizure disorders, etc. which were signed by their physicians.(Medco's Exhibit F). Plaintiff does not respond to this evidence.

Taking the evidence in the light most favorable to the non-movant, the medical records show that at least some of Medco's patients were admitted upon the referral of a licensed physician pursuant to an individualized written plan of treatment. (See Medco's Exhibit F). Unfortunately, plaintiff does not provide a list of patients who were not referred by a physician and for whom Medco received Medicare money nor does plaintiff establish that these were the patient files reviewed by Drs. Georgemiller and Baer. In addition, the evidence Medco presents suggests that Medicare denied certain of Medco's claims because certain patients were not properly referred by a physician. Plaintiff has not shown that Medicare actually compensated Medco for the patients whose files were reviewed, or for others who were not referred by a physician. Without such evidence in the record we cannot find for plaintiff.

The Act explains, in order for CMHC services to be covered, the patient would require inpatient psychiatric care in the absence of the partial hospitalization services; (2) an individualized, written plan for furnishing the CMHC service has been established by a physician and is reviewed periodically by a physician; and (3) the CMHC services are one where furnished while the patient is or was under the care of a physician. 42 U.S.C. § 1395n(a)(2)(F); see also 42 C.F.R. 424.24(e). Plaintiff has produced evidence that physicians were referring certain patients to Medco and providing some written orders as to the services, therapy, and medications they

should be administered. Accordingly, an issue of fact remains as to whether Medicare compensated Medco for the treatment given to the patients whom plaintiffs experts found were not admitted or supervised in accordance with Medicare's requirements. Accordingly, plaintiffs motion for summary judgment on this first argument is denied.

Plaintiff's second argument contends that Medco billed Medicare for services that were not medically necessary under 42 U.S.C. § 1395y(a)(9). According to plaintiff, Medco only provided "custodial care" for its patients, not "active treatment." The Medicare program allows payment for CMHCs or other partial hospitalization services for "active treatment" which can reasonably be expected to improve a patient's condition. 42 C.F.R. §§ 410.43, 410.110; 59 Fed. Reg. at 6577.

Plaintiff offers the opinions of two experts, Dr. Georgemiller and Baer to support its position that Medco's patients received custodial care rather than active treatment. Plaintiffs experts reviewed 1994 files for 16 of defendant's patients in search of evidence that Medco provided treatment that was not medically necessary. The experts found that all of 16 cases they had reviewed failed to demonstrate that the patients were proper candidates for partial hospitalization services, that there was no physician oversight in treatment planning, diagnosis, or monitoring ongoing treatment rendered, and that much of the program offered at Medco were "purely activity oriented for purposes of social stimulation."

Plaintiff asks this court to extrapolate from the experts' findings and conclude that Medco fraudulently billed Medicare for all of its patients. Plaintiff provides no case law or other authority to support such a request. Moreover, Medco has submitted several claims that were rejected by Medicare, presumably to demonstrate that Medicare did not pay for all of the

14

treatment that their patients received.

In addition, plaintiff fails to provide any evidence that Medco billed Medicare or that Medicare reimbursed Medco for all treatment given to the sixteen patients whose files the experts reviewed. The evidence demonstrates that Medicare rejected certain claims made for treating patient Smith, and that Smith's file is one of the files the plaintiff's experts reviewed.

Although this evidence suggests that Medco was not eligible to be reimbursed for patient Smith's treatment there is a question of fact remaining. The court cannot simply assume that Medco requested money from Medicare to pay for Smith's treatment, or that the money Medco ultimately received from Medicare went to pay for patient Smith's treatment. Because plaintiff does not produce evidence that Medco billed Medicare for the same patients that plaintiff contends did not qualify for Medicare benefits, plaintiff does not demonstrate that defendant submitted false claims for even the sixteen patients whose files they discuss. Furthermore, a question of fact remains as to the type of care these patients were receiving. Plaintiff contends it was an Adult Day Care Program based upon the conclusions of its experts. Medco's records, however, raise a question of fact. Accordingly, summary judgment is denied as to argument two.

Third, plaintiff contends that the certified cost report Medco submitted in 1994 contained false claims, and that therefore Medco recovered certain non-reimbursable expenses from Medicare. During the HHS audit in 1996, Medco provided plaintiff with invoices and receipts for meals, entertainment, and transportation to justify its 1994 expenses. Plaintiff argues that Medicare does not pay for such expenses, citing 42 U.S.C. § 1395x(ff)(2)(I), which states that partial hospitalization services under Medicare "in no event...include meals and transportation." Medco responds that meals and transportation are not necessarily non-reimbursable costs, but

does not provide any evidence or authority in support of this proposition. Medco ineffectively disputes the amounts paid to United Transportation by referring this court to Exhibit A which is confusing and unclear. It also fails to address the purchase order from United Transportation to Medco (Plaintiff's Exhibit 13 which indicated that Medco had paid United Transportation $211,353.53).

Plaintiff presents evidence that Medco paid over $341,000 for patient transportation and catering services during 1994, and that Medco listed these expenses in its 1994 cost report to justify the amount it billed Medicare that year. Ward, one of the auditors, attests that Medco presented a purchase order stating that it paid United $211,353.53 during 1994. The purchase order, dated February 24, 1995, is entitled: "Annual purchase order to cover transportation for Adult Day Care Program clients during the period of Jan-Dec 1994." Ward also attests that Medco provided the auditors with an invoice which showed that the company had paid Larry-Faisal Catering Services $130,000 in 1994 for meals. Plaintiff attaches an invoice stating that Medco paid Larry-Faisal Catering Services $111,545.22 for "services rendered" during the period January 1994 through December 1994.

Plaintiffs evidence demonstrates that Medco paid upwards of $341,000 for catering and transportation services in 1994 and billed Medicare for these costs. In light of this undisputed evidence the court concludes that plaintiff has established that Medco submitted false claims and that plaintiff suffered more than $341,000 worth of damage as a result of these false claims. Accordingly, <u>the court grants partial summary judgment for plaintiff</u> on the issue of liability with respect to its claim that Medco submitted false claims for non-reimbursable meals and transportation costs.

Finally, plaintiff contends that Medco billed Medicare for transportation services provided by United Transportation but did not disclose that United Transportation was a "related entity" pursuant to 42 C.F.R. §413.17. Medicare limits the amount it will reimburse a provider for services that are provided by related parties and/or organizations. See *Hinsdale Hosp. Corp. v. Shalala*, 50 F. 3d 1395, 1400 and 42 C.F.R. § 413.17. Medicare places certain restrictions on reimbursement for services provided to CHMCs by a related entity. Medco agrees that it erroneously stated in its cost report that it did not do business with related parties, but argues that it is not unlawful to transact business with a related entity. Plaintiff does not contend that Medco violated the law by transacting business with United Transportation, however. Rather, plaintiff argues that Medco was required by law to disclose that it was "related" to United Transportation.

The court concludes that plaintiff has established that Medco submitted a false claim when it failed to disclose that it was related to United Transportation. <u>The court grants partial summary judgment for defendant on this aspect of its claim</u>.

Plaintiff's last argument contends that Medco is liable under common law theories of fraud, unjust enrichment and payment by mistake. Plaintiff premises its common law fraud claim upon the fact that Medco did not operate as a CHMC. We disagree. As indicated earlier it cannot be established as a matter of undisputed fact that Medco was conducting an Adult Day Care Program rather than a CMHC. A number of Medco's patients suffer from severe mental conditions such sczhiprehnia, psychosis etc. and a disputed issue of fact remains as to the nature of the program. Therefore, summary judgment is denied as to the common law theories of fraud.

17

## II. United Transportation

Plaintiff alleges that United Transportation defrauded Medicare by double billing for its transportation services. Plaintiff claims that United Transportation billed and received payment from Medco for transporting patients, but also billed and received payments for these same trips by Medicaid. United Transportation disputes this assertion arguing that the checks made payable to Faisal covered his salary and as part of his duties at Medco he "coordinated the transportation of patients". This argument lacks merit in that transportation is still the basis of the cost.

In order to prove liability against United Transportation, plaintiff must show that the patient trips that United Transportation billed to Medco were the same patient trips that were billed to and paid for by Medicaid. Although plaintiff provides a list of patients for whom United Transportation received Medicare payments during November of 1994, plaintiff does not present a corresponding list of patients for whom United Transportation billed Medco during the same period. Plaintiff claims in order to protect the privacy of the patient's involved it did not supply the names of the patients which is certainly understandable but this still does not provide the court with the matching information it needs. The court, therefore, denies plaintiff's motion for partial summary judgment on its claims against United Transportation.

## CONCLUSION

For the foregoing reasons, plaintiffs motion for partial summary judgment is granted in part and denied in part as to Medco. (#56-1). Medco's motion for additional discovery pursuant to 56 (f) is denied. (#77-1).Plaintiff's motion for partial summary judgment as to United Transpiration is denied. (#53-1).

SO ORDERED

ENTERED: 3/15/00

HON. RONALD A. GUZMAN
**United States Judge**